FILED

2012 Mar-29  PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Timothy E. Ellis, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
|     vs. | ] 2:10-CV-3160-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
|     Defendant. | ] |

MEMORANDUM OF OPINION

## I.    Introduction

The Plaintiff, Timothy E. Ellis, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability and disability insurance benefits ("DIB"). Mr. Ellis timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Ellis was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a 10th grade education. (Tr. at 16, 126.) His past work experiences include employment as a power line maintenance lineman,

maintenance supervisor, tree trimmer, and roofer. (Tr. at 16.) Mr. Ellis claims that he became disabled on July 13, 2005, due to osteoarthritis, degenerative disk disease (DDD), obesity, and memory problems. (Tr. at 13-14.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled, and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled, and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Ellis meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2010. (Tr. at 13.) She further determined that Mr. Ellis has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's degenerative disc disease and ankle osteoarthritis are considered "severe" based on the requirements set forth in the regulations. (*Id.*)

However, she found that these impairments neither meet nor medically equal any of the listed impairments in Subpart P, Appendix 1, Regulations No. 4. (Tr. at 14.) The ALJ did not find Mr. Ellis's complaints to be totally credible, and she determined that he has the following residual functional capacity: "sedentary work except he would require a sit/stand option, cannot operate left foot controls, can occasionally climb ramps or stairs, but never climb ladders, scaffolds, or ropes, can occasionally stoop, but cannot kneel, crouch, or crawl." (*Id.*)

According to the ALJ, Mr. Ellis is unable to perform any of his past relevant work, he is a "younger individual," and he has a "limited education and is able to communicate in English" as those terms are defined by the regulations. (Tr. at 16.) The ALJ found that Mr. Ellis has the residual functional capacity to perform a significant range of sedentary work. (*Id.*) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.19 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as dowel inspector, cuff folder, and almond blancher. (Tr. at 17.) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

## II.     Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mr. Ellis alleges that the ALJ's decision should be reversed for three reasons. First, Mr. Ellis claims that the ALJ erred in failing to consider the severity of all of his impairments. (Doc. 11 at 8.) Second, Plaintiff alleges that the ALJ failed to properly develop the record when she did not order a Psychological Consultative Examination and an updated Physical Consultative Examination. (Doc. 11 at 10.) Third, Mr. Ellis contends that the ALJ failed to consider the entirety of the opinion evidence in the record. (Doc. 11 at 12.) Finally, Mr. Ellis advances a motion for remand that seeks to have the ALJ consider a Physical Capacities Evaluation conducted by her treating physician, Dr. Michael Kendrick. (Doc. 11 at 13.)

### A.   Severity of Impairments

Plaintiff contends that the ALJ failed to properly consider certain impairments in his decision. (Doc. 11 at 9.)  Specifically, Plaintiff argues that the ALJ did not

mention her hypertension ("HTN"). (Id.) In addition, Plaintiff submits that the ALJ should have considered her obesity, depression, and anxiety to be severe impairments. (Doc. 11 at 11.)

This Court finds Plaintiff's arguments to be without merit for two reasons. First, step two requires only that the ALJ determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." 20 C.F.R. § 404.1520(c). Because the ALJ found in Plaintiff's favor with at least one impairment, he could not have erred at step two. Second, Plaintiff points only to the diagnosis of various impairments without properly demonstrating how they limit her ability to work. Based on the entire medical record, substantial evidence supports the ALJ's conclusion that Plaintiff's alleged symptoms and limitations "are not of a disabling level." (Tr. at 15.)

### 1.    No Error at Step Two

In her assessment, the ALJ determined that Plaintiff suffered severe impairments consisting of degenerative disc disease and ankle osteoarthritis. (Tr. at 13.)  Plaintiff contends that the ALJ erred when she did not find certain other impairments to also be "severe." (Doc. 11 at 8.)  However, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered

severe." *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 825 (11th Cir. 2010) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that step two acts as a filter and that the finding of any severe impairment is enough to satisfy the requirement of step two)).  Therefore, when the ALJ finds at least one impairment to be severe at step two, any error caused by not recognizing all severe impairments is harmless. *Id.*  Here, the ALJ found that Mr. Ellis indeed suffered severe impairments consisting of degenerative disc disease and ankle osteoarthritis. (Tr. at 13.)  Having found in Plaintiff's favor with at least one impairment at step two, the ALJ properly moved to the next step in the evaluation process.

### 2.    Plaintiff's Burden to Show Work-Related Limitations

Plaintiff contends that the ALJ erred by not properly considering her obesity, hypertension, depression, and anxiety. (Doc. 11 at 9.)  Even assuming that it would be possible for the ALJ to commit error at step two after having found at least one severe impairment, Plaintiff still bears the burden of showing why each of her impairments should have been considered severe.  To establish that these impairments are indeed severe and disabling, Mr. Ellis bears the burden of proving the inability to perform her previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990).  Although Mr. Ellis points to the diagnosis of obesity, the mere diagnosis of impairments "does not

reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Rather, the Social Security Act "defines 'disability' in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace." *Bowen v. Yukert*, 482 U.S. 137, 146 (1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983)).  As stated in the regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a)(5)(c).  Thus, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The claimant bears the burden of demonstrating the existence of such a disability. See *Carnes v. Sullivan*, 963 F.2d 1215, 1218 (11th Cir. 1991).

In finding that Plaintiff's obesity, hypertension, anxiety, and depression were not themselves disabling, the ALJ determined that Plaintiff failed to meet this burden with regard to each impairment.  This Court finds substantial evidence in the record supporting  the ALJ's treatment of each of these impairments.

First, Plaintiff claims that the ALJ did not consider obesity to be a severe impairment when determining whether Plaintiff was disabled. In particular, Plaintiff contends that the ALJ contradicted herself when she found that Plaintiff's obesity was not severe, then later stated, "Clearly the claimant's obesity affects his ability to perform some of the physical requirements of work, as it is likely that his obesity contributes to his complaints of back and ankle pain." (Doc. 11 at 8-9.) Social Security Ruling ("SSR") 02-1p states that for obesity there will be "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe."

The ALJ found "no evidence that the claimant's obesity precludes him from performing work at the sedentary level of exertion, as this level of work activity would minimize the effect of the claimant's obesity on his joints and body systems." (Tr. at 15.) In reaching her decision, the ALJ analyzed the medical evidence of the Plaintiff's impairments. The ALJ specifically looked at the Consultative Examination ("CE") conducted by Dr. Peter Morris, the medical evidence gathered by Plaintiff's treating physician, Dr. Kendrick, on October 3, 2006, and the medical progress notes submitted by Dr. Kendrick dating from October 15, 2008, through November 5, 2009. (Tr. at 15, 289-93, 344-61.)

The CE performed by Dr. Peter Morris notes that Mr. Ellis can only walk short distances with the use of a cane, but did not indicate that the claimant had any difficulty sitting. (Tr. at 15.) The physical examination performed by Dr. Kendrick notes that although Mr. Ellis is morbidly obese, "he is in no acute distress." (Tr. at 292-93.) Also, the progress notes submitted by Dr. Kendrick describe Mr. Ellis as "obese," but also "alert," and "in no acute distress." (Tr. at 345, 348, 352, 358.) Neither Dr. Morris's nor Dr. Kendrick's notes make any mention any functional limitations that would prevent Plaintiff from working at a sedentary level. Further, the RFC evaluation performed by the occupational therapist Dr. Kerria Girouard and physical therapist Dr. Mike Kellum found that Mr. Ellis is capable of performing sedentary work. (Tr. at 362-64.)

Because the records support Plaintiff's ability to work at the sedentary level despite his weight, the ALJ did not err when she found the Plaintiff's obesity to be a non-severe impairment.

Plaintiff next argues that the ALJ failed to even mention his hypertension. (Doc. 11 at 9.) However, the ALJ states, "I have evaluated the claimant's obesity and accompanying impairments in accordance with Social Security Ruling 02-1p." (Tr. at 15.) SSR 02-1p states that obesity "is a risk factor that increases an individuals's

chances of developing impairments," and "commonly leads to, and often complicates . . . hypertension." As noted above, the ALJ found that Plaintiff's obesity does not limit his ability to perform sedentary work. Plaintiff's hypertension, as an accompanying impairment to obesity, was encompassed within the ALJ's analysis of Plaintiff's obesity.  Dr. Morris's CE states that the Plaintiff took Benicar for hypertension from 2007 through January 2009 (Tr. at 264), but does not indicate that this imposes any limitations on Plaintiff's ability to perform sedentary work.

Plaintiff also claims that the ALJ failed to consider his anxiety and depression as severe impairments. (Doc. 11 at 9.) Plaintiff claims that he "testified to psychological symptoms including short-term memory loss, anxiety and depression . . . ." (Doc. 11 at 6.) However, "If an impairment can reasonably be remedied or controlled by treatment, it cannot serve as a basis for a finding of disability." *McCall v. Bowen*, 846 F.2d 1317 (11th Cir. 1988). The record indicates Plaintiff is being treated with Zoloft for his depression, and Xanax for his anxiety. (Tr. at 294-317.) Dr. Kendrick's progress notes do not indicate that Plaintiff's anxiety and depression would impair his ability to work in anyway. (Tr. at 344-61.) Further, the notes lack any mention of complications resulting from these medications. (*Id*.) Plaintiff mentioned his prescriptions for anxiety and depression during the hearing, and stated that he has

anxiety attacks, but did not state that these symptoms are not controlled by his prescribed medications. (Tr. at 74.) Plaintiff's depression and anxiety appear to be reasonably remedied or controlled by his medication. Therefore, Plaintiff's anxiety and depression are not severe.

### B.    Development of the Record

Next, Plaintiff argues that the ALJ failed to develop the record. Specifically, Plaintiff alleges that the ALJ could not properly evaluate his mental health in the absence of a Psychological CE, and that the ALJ erred by not ordering an updated Physical CE. (Doc. 11 at 10.)

Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971). The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). In order to trigger remand for reconsideration, the record must reveal "evidentiary gaps which result in unfairness or clear prejudice." *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (quoting *Ware*, 651 F.2d at 413).

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other

evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[A]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence he believes will prove his alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

## 1. Psychological CE

Plaintiff first argues that "in order to properly evaluate the mental/psychological allegations of impairment the ALJ should have ordered a psychological CE to allow a qualified expert to properly evaluate and record any psychological limitations to work that might be experienced by The Plaintiff." (Doc. 11 at 10.) Plaintiff's argument refers to his anxiety and depression, which, as noted above, were controlled by medication, and also refer to testimony by the Plaintiff that he suffers from "memory problems." (Tr. at 68.)

Dr. Estock, a non-examining agency psychiatrist, noted that the Plaintiff complained of memory problems, and stated that the Plaintiff showed "little ability to concentrate, cannot stay focused, and cannot remember things." (Tr. at 279.) However, Dr. Estock also noted that "there is no traumatic or organic cause for memory problems." (Tr. at 279.) Dr. Kendrick's progress notes dating from October 15, 2008, through November 5, 2009 state that the Plaintiff's memory is "grossly intact," that his attention is "normal," and that his concentration abilities are "normal." (Tr. at 344-62.) The progress notes from November 19, 2008, through November 5, 2009 indicate no psychiatric problems. (Tr. at 344-59.) Instead, the notes find Mr. Ellis's "judgment and insight intact," his "rate of thoughts normal, thought content logical," and his "mood normal, affect appropriate." (Tr. at 346, 349, 352, 356, 359.) The CE conducted by Dr. Morris states that the Plaintiff complains of short term memory loss, but makes no recommendation that he should be examined by a psychiatrist. (Tr. at 264-66.) *See Good v. Astrue*, 240 Fed.Appx. 399, 404 (11th Cir. 2007) (finding that the ALJ need not order an additional consultative examination where no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination.) Finally, there is no indication that Plaintiff's physicians recommended any sort of treatment

for his memory problems. (Tr. at 260-62, 264-66, 289-93, 344-61.)  This Court does not find that the ALJ should have ordered a psychological CE, as the record was fully and fairly developed such that he could make an informed decision.

### 2. Physical CE

Plaintiff also alleges that the ALJ should have ordered an updated Physical CE. (Doc. 11 at 11-12.) "A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [a] claim." 20 C.F.R. § 404.1519(b). The ALJ will "assess [a] residual functional capacity based on the relevant evidence in [the] case record." 20 C.F.R. § 1545(a)(1).

Plaintiff argues that the Functional Capacity Evaluation ("FCE") conducted by Drs. Girouard and Kellum was too remote in time to serve as the basis for the ALJ's findings regarding Plaintiff's Residual Functional Capacity ("RFC"). (Doc. 11 at 12.) However, the ALJ did not rely exclusively on the FCE in making his determination. Instead, the ALJ took into account the medical records as a whole, as well as the Plaintiff's testimony. The functional capacity evaluation states that "Mr. Ellis was able to perform frequent sitting, handling, fingering, and pivot twisting," and "because Mr. Ellis was only able to walk and stand on an occasional basis, he is placed in the sedentary category." (Tr. at 362.)  The ALJ noted that the conclusions in the

FCE were "consistent with the record and the claimant's admitted abilities." (Tr. at 16.) The ALJ noted that "The claimant spends the majority of his day functioning at the equivalent of the sedentary level." (*Id.*)

The ALJ also specifically cited the Physical CE conducted by Dr. Morris on December 12, 2007, and the November 5, 2009, progress notes from Dr. Kendrick. (Tr. at 15.) Dr. Morris found that "[Plaintiff] can walk very short distances with use of a cane," that "[Plaintiff] cannot bend or stoop," that "[Plaintiff] can do some cooking while sitting," and that "[Plaintiff] can drive his car short distances." (Tr. at 264.) Dr. Kendrick's progress notes found that some of Plaintiff's aggravating factors included "standing for long periods of time, walking, cold, and changes in weather." (Tr. at 344.) The ALJ specifically noted that neither Dr. Morris nor Dr. Kendrick indicated that the claimant had any difficulty sitting. (Tr. at 15.)

The ALJ had sufficient evidence before her to come to a determination regarding the Plaintiff's RFC. Because the ALJ considered all of the Plaintiff's symptoms and the record as a whole, the record was fully and fairly developed such that she could make an informed decision without an additional CE.

**C.    Review of Opinion Evidence**

Plaintiff alleges that the ALJ failed to consider the entirety of the opinion evidence. Specifically, Plaintiff claims that the ALJ failed to mention the Vocational Assessment performed in July 2006 by Judy Malone. (Doc. 11 at 12.)

In determining disability, the ALJ considers evidence from "acceptable medical sources," which include licensed physicians and licensed or certified psychologists. 20 C.F.R. § 416.913(a). The ALJ can consider evidence not only from medical sources, but also "evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 416.913(d). "The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3). The weight given to opinions of non-examining sources "will depend on the degree to which they provide supporting explanations for their opinions." *Id.*

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e). A consultative examiner's opinion is subject

to the same tests as a treating physician; if the opinion is inconsistent with the record or the physician's notes, the ALJ may give it less weight. *See Crawford*, 363 F.3d at 1160 (evaluating consultative examiner's opinion in light of contemporaneous examination by another doctor). Furthermore, because a consultative examiner sees a patient on one occasion rather than on an ongoing basis, the opinions derived from such an examination are "not entitled to great weight." *Id.*

Ms. Malone is a Vocational Rehabilitation Consultant who prepared a report for Plaintiff's worker's compensation action against his former employer in 2006. (Tr. at 144.) Ms. Malone is not a physician and she did not examine the Plaintiff. Instead, in determining Plaintiff's vocational disability rating for the worker's compensation action, Ms. Malone interviewed the Plaintiff, then looked at his medical records, the FCE conducted by Drs. Girouard and Kellum, the Dictionary of Occupational Titles and the SkillTran Pre-Post Analysis. (Tr. at 147.) Ms. Malone's resulting conclusion was that "he is 100% vocationally disabled, unless Mr. Ellis is provided with vocational rehabilitation/placement services to return him to gainful employment within the restrictions of his FCE." This is a determination that is reserved for the ALJ and it is also inconsistent with the other records in this case.

In determining Plaintiff's RFC in the present case, the ALJ found, in sum, that Plaintiff can perform the full range of sedentary work  (Tr. at 17.)   In coming to this conclusion, the ALJ considered Plaintiff's medical records, the opinions of Plaintiff's consultative physicians, and Plaintiff's own testimony.

Since Ms. Malone's conclusions were not medical opinions, there is sufficient evidence to conclude that the ALJ considered Plaintiff's medical condition as a whole, and "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005). Therefore, ALJ did not err by failing to specifically state why she did not rely on the Vocational Assessment performed by Judy Malone.

### D.    Motion for Remand

Finally, Plaintiff presents a motion for remand to consider new evidence. Specifically, Plaintiff states that he was unable to procure opinion evidence from his treating physician, Dr. Michael Kendrick, and that the case should be remanded to consider Dr. Kendrick's Physical CE of the Plaintiff. (Doc. 11 at 13.)

Remand for consideration of new evidence is appropriate under "sentence six" of § 405(g) if this Court finds the claimant has proven that "(1) there is new, non-cumulative evidence, (2) the evidence is 'material,' that is, relevant and probative so

that there is a reasonable probability that it would change the administrative result, and (3) that there is good cause for the failure to submit the evidence at the administrative level." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1067-68 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988), *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986)).

### 1. New and Noncumulative Evidence

Plaintiff cannot satisfy the requirements of "sentence six." While Dr. Kendrick's PCE is new, because it did not exist prior to the ALJ's decision, it is also cumulative. Evidence is considered new and noncumulative when "no similar evidence is introduced in the administrative record." *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).

The record already contains a physical CE, performed by Dr. Morris in 2007. (Tr. at 264.) As discussed above, an updated physical CE was unnecessary to the ALJ's determination. The record also already contains seventeen pages of notes from Dr. Kendrick, the doctor who conducted the proposed CE. (Tr. 344-61.)  Therefore a physical CE conducted by Dr. Kendrick would be cumulative and unnecessary, as there is similar evidence already in the administrative record.

### 2. Evidence must be Material

Even if the proposed evidence were new and noncumulative, the evidence is immaterial because it is not relevant to the time period in question. To be relevant, the evidence must relate to the period on or before the date of the ALJ's decision. *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (quoting 20 C.F.R. § 404.970(b), which only requires the Appeals Council to consider evidence relating to the period before the ALJ's decision). Plaintiff's alleged onset date is July 13, 2005. (Doc. 11 at 1.) Thus, the evidence at hand should relate to the period between July 13, 2005, and March 12, 2010, to be relevant.  Dr. Kendrick's CE was conducted on December 13, 2010, over nine months after the ALJ's March 12, 2010, decision. (Doc. 11-1 at 2-4.) *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). ("While [a doctor]'s opinion one year later may be relevant to whether a deterioration in [Plaintiff]'s condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.") Because the proposed CE is not relevant to the period in question, it fails the materiality requirement.

### 3. Good Cause for Failure to Submit Evidence

Plaintiff argues that he could not obtain a Physical CE from his long-term treating physician because Dr. Kendrick changed practice locations.  (Doc. 11-1 at 14.) The Eleventh Circuit has held that the "good cause requirement is satisfied when the

evidence "did not exist at the time of the administrative proceeding." *Cannon v. Bowen,* 858 F.2d 1541, 1546 (11th Cir. 1988); *See also Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986). Because the evidence did not exist at the time the ALJ reached her decision, the good cause requirement is satisfied.

Although there is good cause for failing to submit the evidence at the administrative level, this Court can remand a case for further consideration only if Plaintiff meets all three elements of 42 U.S.C. § 405(g). Because the proposed evidence is cumulative and immaterial, Plaintiff's motion for remand to consider new evidence is due to be denied.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Ellis's arguments, the Court finds that the ALJ's decision is supported by substantial evidence and in accordance with the applicable law. A separate order will be entered.

Done this 29th day of March 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458